A09A1297. IN RE ESTATE OF WARREN.
(685 SE2d 411)

ANDREWS, Presiding Judge.
Ralph Warren, the son of William Warren, deceased, appeals from the order of the Hancock County Superior Court ruling that

Doris Mattison is the born-out-of-wedlock daughter of William Warren and therefore his heir with the right to inherit from his estate.[1] Ralph Warren claims the superior court erred by recognizing a rebuttable presumption under OCGA § 53-2-3 (2) (B) that William Warren was Mattison's father based on parentage-determination genetic testing establishing at least a 97 percent probability of paternity. For the following reasons, we find no error and affirm.

Mattison filed a petition seeking a determination that she is the born-out-of-wedlock daughter of William Warren and entitled as his heir to inherit from his estate. Under OCGA § 53-2-3:

> The rights of inheritance of a child born out of wedlock shall be as follows:
>
> (1) A child born out of wedlock may inherit in the same manner as though legitimate from or through the child's mother, the other children of the mother, and any other maternal kin;
>
> (2) (A) A child born out of wedlock may not inherit from or through the child's father, the other children of the father, or any paternal kin by reason of the paternal kinship, unless:
>
> (i) A court of competent jurisdiction has entered an order declaring the child to be legitimate, under the authority of Code Section 19-7-22 or such other authority as may be provided by law;
>
> (ii) A court of competent jurisdiction has otherwise entered a court order establishing paternity;
>
> (iii) The father has executed a sworn statement signed by him attesting to the parent-child relationship;
>
> (iv) The father has signed the birth certificate of the child; or
>
> (v) There is other clear and convincing evidence that the child is the child of the father.
>
> (B) (i) Subparagraph (A) of this paragraph notwithstanding, a child born out of wedlock may inherit from or through the father, other children of the father, or any paternal kin by reason of the paternal kinship if evidence of the rebuttable presumption of paternity described in this subparagraph is filed with the court before which proceedings on the estate are pending and the presumption is not

---

[1] Ralph Warren brings this appeal acting individually and as administrator of the estate of his mother, Elizabeth Warren, deceased.

overcome to the satisfaction of the trier of fact by clear and convincing evidence.

(ii) There shall exist a rebuttable presumption of paternity of a child born out of wedlock if parentage-determination genetic testing establishes at least a 97 percent probability of paternity. Parentage-determination genetic testing shall include, but not be limited to, red cell antigen, human leucocyte antigen (HLA), red cell enzyme, and serum protein electrophoresis tests or testing by deoxyribonucleic acid (DNA) probes.

(C) If any one of the requirements of divisions (i) through (v) of subparagraph (A) of this paragraph is fulfilled, or if the presumption of paternity set forth in subparagraph (B) of this paragraph shall have been established and shall not have been rebutted by clear and convincing evidence, a child born out of wedlock may inherit in the same manner as though legitimate from and through the child's father, the other children of his or her father, and any other paternal kin;

(3) In distributions under this Code section, the children of a deceased child born out of wedlock shall represent that deceased child.

Applying this Code section, the superior court found: (1) that Mattison, who was born out of wedlock, filed with the court evidence showing parentage-determination genetic testing by deoxyribonucleic acid (DNA) probes which established at least a 97 percent probability that William Warren was her father; (2) that the evidence created a rebuttable presumption that William Warren was her father; (3) that no clear and convincing evidence rebutted the presumption of paternity; and (4) that Mattison therefore established that she is the daughter of William Warren entitled to inherit from his estate in the same manner as though legitimate.

Mattison produced evidence of DNA testing done on DNA samples collected by buccal swabs from Mattison, Mattison's biological mother, and Ralph Warren, which showed a 99.65 percent probability that Mattison and Ralph Warren are half-siblings by having either the same mother or the same father. Since it was undisputed that Mattison and Ralph Warren did not have the same biological mother, and that William Warren was Ralph Warren's biological father, the trial court correctly found on this record that DNA testing which established a 99.65 percent probability that Mattison and Ralph Warren are half-siblings also established a 99.65 percent probability that William Warren was Mattison's father.

We find no merit to Ralph Warren's contention that "parentage-

determination genetic testing" by DNA probes, as set forth in OCGA § 53-2-3 (2) (B) (ii), is limited to direct comparison of DNA samples taken from the born-out-of-wedlock child and the deceased putative father. See OCGA § 53-2-27 (allowing court order to obtain DNA samples from the remains of a decedent and "from any party in interest whose kinship to the decedent is in controversy"). In the present case, the DNA testing which established a 99.65 percent probability that Ralph Warren and Mattison are half-siblings was "parentage-determination genetic testing" under the statute because the test results along with the undisputed facts demanded the conclusion that the same probability exists that William Warren was Mattison's father. The trial court did not err by finding that the DNA testing produced by Mattison created the rebuttal presumption set forth in OCGA § 53-2-3 (2) (B).

*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED OCTOBER 8, 2009.

*Smith, Shaw & Maddox, Mather D. Graham, John M. Graham III*, for appellant.

*Bush, Crowley, Leverett & Leggett, Walter E. Leggett, Jr.*, for appellee.